## BRYANT INVESTMENT COMPANY v. R. S. DIMMICK AND ANOTHER.[1]

April 27, 1928.

No. 26,601.

**Person cannot repudiate a contract claimed to be unauthorized after accepting benefits under it.**

1. Evidence shows a complete ratification of acts complained of. A party cannot repudiate a claimed unauthorized contract after accepting benefits thereunder.

**Award of any damages would have been based on conjecture.**

2. The amount of damages, if any, was not proved. Any award would have been upon mere speculation and conjecture. A verdict thus arrived at could not be permitted to stand.

**Trial court should direct a verdict when it ought to set aside a verdict returned in favor of the opposite party.**

3. It is the duty of a trial court to direct a verdict at the close of the evidence if it would be its duty to set aside a contrary verdict returned by the jury. A question of law only is presented by the motion to set aside a verdict.

[1]Reported in 219 N. W. 185.

Agency, 2 C. J. p. 493 n. 55; p. 954 n. 81.
Corporations, 14a C. J. p. 153 n. 50, 53.
Damages, 17 C. J. p. 758 n. 80.
Trial, 38 Cyc. p. 1571 n. 16; p. 1902 n. 57.

Plaintiff appealed from an order of the district court for Hennepin county, Bardwell, J. denying its motion for a new trial. Affirmed.

*Ell M. Roston* and *Earl J. Lyons,* for appellant.
*Arctander & Jacobson,* for respondents.

HILTON, J.

Action to recover damages for alleged gross mismanagement and negligence by defendants, acting as officers of plaintiff corporation, in the conduct of the corporation business. A verdict for defendants was directed at the close of plaintiff's case. The motion for a directed verdict was made upon the grounds: (1) That there had been no cause of action proved; (2) that no damages had been shown. The appeal is stated to be from the order of the district court denying plaintiff's alternative motion for judgment notwithstanding the verdict or for a new trial. As a matter of fact the motion was made only for a new trial, and it was denied.

In 1919 Abbie Bryant died leaving eight children to whom she devised property known as 3032 Hennepin avenue, Minneapolis, of the approximate value of $20,000 to $30,000. Soon after the death of the mother five of the heirs (sisters) bought the interests of the other three, and a mortgage was placed on the premises for $10,000 with which to pay the three in question. Plaintiff, the Bryant Investment Company, was incorporated by the five owners for the management of that real estate which was conveyed to it. The capital stock of the corporation was $15,000, each of the owners holding 30 shares. The articles of incorporation provided that defendant Edith Bryant Dimmick should be the president and treasurer, Jessie Bryant Helm vice president, and defendant R. S. Dimmick (husband of Edith Dimmick) secretary; they constituted the first board of directors. R. S. Dimmick had no real interest in the

corporation but was considered to have one of his wife's shares in order to qualify as a director.

Shortly prior to the incorporation of plaintiff a meeting of the five proposed stockholders and Dimmick was held in Cleveland, Ohio, where they all lived except the Dimmicks. An attempt was made at that time to elect Jessie Helm as president, Margaret Bryant vice president, and Edith Dimmick secretary. It was then agreed that Mrs. Dimmick should be the resident manager of the corporation at Minneapolis.

It was the purpose of all interested parties to have a building constructed upon the premises, the rentals and income from which would be sufficient to pay not only all carrying charges but eventually leave the property clear of debt. There were only a few meetings of the corporation held. It was a close corporation. Business was transacted loosely, more like a partnership than a corporation —two or three stockholders getting together and discussing affairs and sometimes communicating by mail. No adequate minutes or records were kept. A Minneapolis attorney who had been attorney for the mother was chosen to act as attorney for the five sisters and the corporation. His advice was implicitly followed by them all, and defendants did as he directed in all corporation matters. He advised that the Cleveland meeting was unlawful, and an attempt was made at his office in Minneapolis to hold another one ratifying the proceedings at the Cleveland meeting. He later advised that the Minneapolis meeting was ineffectual in that regard and that Mrs. Dimmick was still president and Mr. Dimmick secretary of the corporation. Whether they were or not, plaintiff is attempting here to recover damages for their mismanagement. They acted upon the attorney's advice, entered into contracts, executed a deed and mortgages, and conducted all the business of the corporation. The stockholders learned from time to time that they were so acting and allowed a continuance of that situation. It is likely that Mrs. Helm was president de jure and Mrs. Dimmick its secretary.

The agreed plan for financing the proposition was that plaintiff should deed the property to the contractor; a first mortgage should then be placed thereon for the largest amount obtainable; a deed

given back to plaintiff and a second mortgage given to the contractor and, if necessary, a third mortgage. As a consideration for the foregoing, the contractor was to erect the building; the sum total of these mortgages was to be the contract price, plus $10,000 necessary to pay off the original mortgage for that sum. The first mortgage was for $60,000, the second for $44,000. A Minneapolis corporation was secured as the contractor; two building contracts were made.

Prior to entering into the building contracts, the same contractor moved the old dwelling house from the building lots to a new location purchased by plaintiff and changed it into a duplex. Plaintiff failing to pay the agreed price for this service, suit was instituted and an order for judgment obtained against it for $6,218.21.

The first building contract was for store buildings only. Later a substituted contract, the second one, provided for store buildings and a garage or automobile show rooms, and these were built. Mrs. Helm at times visited the Dimmicks in Minneapolis and was there after this contract was entered into, while excavating was going on and before the actual building operations began. She made no attempt to interfere. A 15-year lease was made for the show rooms. The building venture was not a success. Sometime after the building was completed plaintiff brought suit against the contractor and one Mapes who was the assignee and holder of the second mortgage which he had foreclosed, charging conspiracy to defraud, asking for heavy damages, the cancelation of the second mortgage and note secured thereby as usurious, and for the setting aside of the foreclosure proceeding. This suit was settled by stipulation of parties, resulting in plaintiff's receiving $6,500 in cash and a release and satisfaction of the claim for $6,218.21 covered by the order for judgment. Then followed the present suit. Such other facts as may be necessary will be referred to later.

1. The contracts here involved, the instruments executed and all business operations conducted for plaintiff by defendants appear conclusively to have been ratified. Mrs. Dimmick was the resident manager and the first president of the corporation. Mr. Dimmick was the original secretary mentioned in the articles of incorpora-

tion. They were advised by the attorney for the corporation who had been selected as such by all interested parties. The other stockholders knew that the Dimmicks were acting as officers of the plaintiff, at least relative to certain very important matters, and made no complaint. They knew of the contract made for the corporation by defendants for moving the old house and changing it into a duplex. They were satisfied. The complaining stockholders knew of the first building contract, and the only desire expressed was for a larger building. Later on the substituted contract for the garage and store building (a larger proposition) was entered into.

As to the last building contract which was carried out, Mrs. Helm and the other complaining stockholders were advised by a Cleveland attorney that it could be repudiated and set aside, but no such action was attempted. They decided to await results in hope that the venture would be successful. The trial court well said in his memorandum: "Had the investment turned out well, we never would have heard of this matter in court."

The stipulation for the settlement of the suit, resulting in plaintiff's profiting in excess of $12,700, was signed for plaintiff by Mrs. Helm as president and Mrs. Dimmick as secretary, the first and only time that these two so officially acted. That suit had to do with the very matters complained of in the instant case. There was a complete ratification. A ratification by acquiescence is sufficient for estoppel. There is far more here than a mere acquiescence. A party cannot repudiate a claimed unauthorized contract after having accepted benefits thereunder. The doctrine of estoppel here applied is sound and salutary. It promotes equity and justice. Bacon v. Bankers Tr. & Sav. Bank, 143 Minn. 318, 321, 173 N. W. 719; Dickinson v. Citizens I. & F. Co. 139 Minn. 201, 165 N. W. 1056; 2 Dunnell, Minn. Dig. (2 ed.) § 2116.

2. There was an absence of proof as to damages. Had the case been submitted to the jury for determination and had there been ample proof as to mismanagement and no proof as to ratification, there was no evidence upon which a jury could figure the amount

of damages. Any result reached would have been upon speculation and conjecture. A verdict thus arrived at could not be permitted to stand.

3. It is the duty of a trial court to direct a verdict at the close of the evidence if it would be its duty to set aside a contrary verdict returned by the jury. A question of law only is presented by the motion to set aside a verdict. Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377; Baxter v. Brandenburg, 137 Minn. 259, 163 N. W. 516, and cases cited; 6 Dunnell, Minn. Dig. (2 ed.) § 9764. The trial court rightly determined, as a matter of law, that the parties were estopped by reason of the ratification and that even though there was a cause of action, no damages had been shown.

Affirmed.